JANUARY TERM, 1882, No. 401.                    APRIL 19TH, 1882.

## Gerhab *versus* Ruth *et ux.*

In an action by a feme covert upon a judgment-note for $1550, in her own name, it was in evidence that all the negotiations for the loan were made by her husband. Subsequently he got the obligor to indorse two promissory notes for him individually, and gave receipts setting forth that the amounts, when paid by the obligor, should go on account of the judgment-note. The husband collected for the wife $93 of interest. He got $750 from the obligor, which the wife gave to him for his use. He bought from the obligor a bill of lumber, which was used upon her lot by her directions. All of these transactions were conducted by the husband alone. The obligor paid one of the indorsed notes and a portion of the other. *Held,* that there was no evidence to submit to the jury as to the agency of the husband for the wife in borrowing the money upon the promissory notes, that these notes were not a set-off against the judgment-note, and that his declarations in her absence did not bind her.

Before SHARSWOOD, C. J.; GORDON, TRUNKEY, STERRETT, and GREEN, JJ. MERCUR and PAXSON, JJ., absent.

Error to the Court of Common Pleas of *Montgomery County.*

[Gerhab *v.* Ruth *et ux.*]

Feigned issue, in which Barbara Ruth and Peter Ruth were plaintiffs, and John Gerhab was defendant, to determine how much, if anything, was due upon a judgment-note for $1550, given by Gerhab to Barbara Ruth, dated April 18th, 1876, and entered April 2d, 1877.

Upon the trial in the Court below, before Ross, P. J., the plaintiffs offered in evidence the note for $1550, admitted a credit of $750, dated March 3d, 1877, and rested.

*John Gerhab*, the defendant, then testified in his own behalf that, on the day of the date of the note, Peter Ruth came to his office and said " that he had received money at home, and that he had no use for it at present, and would not have any need for any of it until after harvest, until he went to lay in some stock for his farm, when he would want a couple of hundred, or $300 or $400. . . . . . So we contracted and agreed on that point, that I would take this money and indorse him a note at the bank, payable at the bank, to pay him $300 or $400, whichever amount he needed. That was all he needed out of this money. So we finally agreed on that point. . . . . . He brought $1550. I counted the money. . . . . . I drew up the note, and, as soon as I drew up the note, he asked me to make that note in his wife's name, on account of that part of the money belonged to his wife, which I then did. In the first he said it was his, and I didn't know anything else. When I was about to draw up the note, and had the note wrote, then he said I should make the note in his wife's name, Barbara Ruth. . . . . . August 9th, 1876, Mr. Peter Ruth came to my place again and called on me to indorse him a note of $300, which I did. . . . . . I drew him up this receipt, and he signed it :

"TELFORD, August 9th, 1876.

" Received of John Gerhab his indorsement for a note at Quakertown Bank of three hundred dollars. When note paid it shall be on account of John Gerhab's judgment-note of $1550.

" $300                              PETER S. RUTH."

". . . . . October 13th, 1876, Peter Ruth called again to have another note indorsed for $200, which I indorsed him, one for $200, and Peter Ruth gave me this receipt:

" Received of John Gerhab a note, indorsed at the Quakertown Bank, of two hundred dollars. If not paid by Peter Ruth when due, and must be paid by John Gerhab, it shall be on account of his judgment-note of $1550.

" $200.                              PETER S. RUTH."

The witness then testified that he paid the note of $300, and a balance of $160 on the second note. Items of $750 and interest $93, and a lumber bill of $107.49, were admitted as credits against the judgment-note.

The witness then testified that, April 15th, 1878, Peter Ruth came to his office to settle up the whole affair, that they made a final settlement, which left a balance of $254.39; that, "for all these notes he wanted me to let them stand open ;" that Ruth offered certain deeds. "He was very willing to take my check if I would fill it for the whole amount; that is the way he said his wife would expect, and he didn't want his wife to know about these notes. . . . . . I tendered him this check for the balance I owed him that day. . . . . . He said it would come all right, but he daren't let the notes come out. . . . . . He made an assignment. . . . . . In all this transaction I never saw Barbara Ruth. . . . . . I never spoke a word with her yet."

*Peter Ruth*, for the plaintiff, in rebuttal, testified substantially :

" I brought this $1550 to John Gerhab's place. It was my wife's money. Not a dollar of it was mine. After I took this money there he gave me a judgment-note. It is not true that I said a part of the money was mine when I got the note indorsed by Gerhab. I did not at that time agree with him that it should be deducted from this judgment. My wife had a son deceased, and he had a guardian. He was deceased, and she had the money, and that money came to her. She had it there in the house, and she had no place for it, and so she asked me."

Upon cross-examination he testified :

" I went there to get the $750 with a note. My wife gave me a note and sent me there to get that money. I got it myself. She gave it to me afterwards for my use. I went there and got the bill of lumber in my wife's name. I got a bill of lumber amounting to over $100. She took it on the lot she bought and used it there. He gave me his note for the $750. I mean I took the note in place of the money. I gave it to a certain man for a debt. I paid my debt with it. My wife consented to that.

" In the first place she sent me there for the money to John Gerhab, because she wanted money when she moved on the lot to repair it. John said : ' I can't give you the money, but she can have as much lumber as she pleases to fix up the lot.' I told her I went there, she sent me there, and I got the lumber. We got a bill there of over $100, that is here."

*Barbara Ruth*, the plaintiff, testified :

[Gerhab *v.* Ruth *et ux.*]

" Q. Where did the money come from whicn you loaned John Gerhab ?

" A. It came from my son's guardian, Samuel Fillman.

" Q. Who was the guardian ?

" A. Joseph Horning.

" Q. Did you at any time know of any notes which John Gerhab indorsed for your husband ?

" A. No, I know nothing of it.

" Q. Did you at any time give him authority ?

" A. I know nothing at all about it."

Cross-examined:

" A. I had this money at home, and told my husband to go and ask somebody to take the money ; then he told me that John Gerhab would take it ; I didn't know anything about John Gerhab, and he said John would give a judg-ment-note and six cents on the hundred.

" Q. You never were with your husband when he went to see Gerhab at any time when he drew any money for you ?

" A. I never talked to him ; I never saw John Gerhab about this business at all."

Counsel for defendant asked the Court to charge, *inter alia :*

" 2. That if the jury find that Mr. Gerhab received the money with the understanding that he might pay the money to the husband in any way that the husband desired, and that he did pay notes of the husband under the distinct promise that if not paid he might deduct it from the judg-ment, then the jury must deduct the notes paid by Gerhab.

" 3. That the acts of the husband bind the wife, unless she gave the defendant notice that she had countermanded the authority ; and she is estopped from repudiating his acts before said notice.

" 4. That the whole question of agency is a question of fact for the jury."

The Court charged, *inter alia :*

" In this case and in this issue Barbara Ruth and Peter Ruth are plaintiffs, and if you find in their favor your ver-dict will be for the plaintiff. John Gerhab is the defendant, but, in any event, your verdict must be, and will be under the ruling of the Court, in favor of the plaintiff. This case, like all others where a married woman is involved in litiga-tion, presents questions of law which, although the Act of 1848 has been in existence since that period, and has been before the Court of last resort, I think, probably some thou-sand times at least, is still left in such doubt and in such difficulty that the wisest and ablest lawyers very often give an opinion with fear and trembling. . . . . .

[Gerhab *v.* Ruth *et ux.*]

" This is the substance of her testimony, for she says she knew nothing whatever about it, and the sole inquiry here, as I regard it, is purely a matter of law, with one slight exception, which it is hardly worth while to submit to you, although I suppose I must do so. It is whether Mr. Gerhab is entitled to a credit of $300, with its interest upon the $300 note, and a credit of $160, the balance unpaid by Peter S. Ruth of the $200 note, or not. It is said that he has the right to set it off against this judgment, for the reason that the husband in law is presumed to be the agent of the wife for the transaction of her business; that the relations between them are such that it becomes his duty to supervise her affairs and act in her place and stead. And this is measurably true, for in an early case, Walker *v.* Ramey, reported, I think, in 1st Wright, it was ruled that where a woman has got property by gift or devise, or obtained it by grant under the Act of 1848, the husband becomes in a large sense her trustee, and it does appear that where the husband has invested money with the knowledge and consent of his wife where he has received the interest, and either by knowledge upon the part of the wife and no protest upon her part against it, that the presumption of law is that he has acted as her agent, and a credit thus obtained by her debtor by the payment of interest under the circumstances, and the interest-money being used in the family with the knowledge of the wife, is sufficient evidence upon which a jury can base a verdict in favor of the defendant who had made such payment to the husband.

" It has never been held, gentlemen of the jury, that this presumption was quite final. It is simply a presumption, and it can be overturned by the truth; and here we have the declaration of the husband to Mr. Gerhab, if you believe Mr. Gerhab's testimony, at the time they tried to settle, that he declared his wife knew nothing about it. We have his own testimony from the stand that he knew nothing about it. We have her own testimony that she knew nothing about it, and therefore if you believe this testimony, and it is all one way in that regard, this wife neither had knowledge of the payment when it was made nor of the agreement that it should be taken on account of the judgment; nor did she recognize it in any way whatever. And if this be true, the legal presumption of the agency of the husband is distinctly and positively rebutted by the proof. Then, again, gentlemen, as a matter of law, I charge you distinctly that while the husband may be presumed by law to be the agent of the wife in the collection of her rent for money invested by him and for money invested by her during a series of years, that

nevertheless this presumption does not apply to the actual conversion by the husband of the wife's property for his own use. If the presumption of agency would justify such a conversion—the whole corpus—that is, the whole body of the estate of a married woman might be swept away by her husband simply presenting himself to her debtor either by mortgage, judgment, plain bond, or note, and having the money paid to him on his bare statement that he was her husband. If that doctrine be true the Act of 1848 keeps the promise to the ear and breaks it to the hope. It is very different in regard to interest and income from investments, for there the accrued interest, if used for the support of the family and for the benefit of the children and clothing of the children and the wife, and to provide the wife with necessaries used as household money with her knowledge, I think that her knowledge would raise the presumption as between herself and her husband that there was an agency, but when it comes to take away the principal fund of the estate of the wife by the husband's voluntary appearance for her, it seems to me that if that be the law we might as well repeal the Act of 1848 in regard to personal property, and place the husband precisely where he was at common law. Now, then, gentlemen, I said there was a question of fact. It hardly rises to the dignity of the question. Mr. Gerhab swears that Mr. Ruth told him that part of this money was his and part was his wife's. I do not intend to rule the testimony out, but I say to you that the declaration of Ruth in regard to part of this money being his is no evidence against his wife unless she was present, or by her acts or by her declarations subsequently ratified it. It does appear in evidence positively here, if you believe the old lady, that this was money entirely her own, which came from the estate of her deceased minor son, and therefore it is that it is hardly worth while even to submit this question of fact to you for your consideration, and in order that the defendant here may have a broad ruling, and if this Court has committed error it can be fairly met and demonstrated, and that error corrected by our superiors, who, I am glad to know, will have an opportunity of again expressing themselves upon this married woman's law, [I charge you distinctly that, if you believe all the evidence all around in this case, the only payments which can be used here as set-off and as payment upon this judgment are the $750, the $93 and the $107.49.] A calculation will be shown you, but that calculation don't bind you. You must make it for yourselves, and ascertain that it is correct, unless counsel on both sides agree; but, in making up your verdict, you will remember that the only

[Gerhab *v.* Ruth *et ux.*]

three items allowed as set-off or payment are the $750, the $93, and the $107.49, [and that you must reject the credits of $300, with its interest, and of $160 and its interest.]

"2. The second point is answered as follows:

"This is true, if it was done with the knowledge and consent of the wife, either expressly given or implied from her knowledge, or from subsequent ratification; but no matter what the understanding may have been, if made with the husband without such consent so established upon the part of the wife, it is not true.

"3. The third point is answered as follows:

"I decline to affirm this point, and for further answer thereto refer to the general charge upon this subject.

"4. The fourth point is answered as follows:

"This is true, if there be any competent proof establishing either agency, expressly or by implication, or establishing it by subsequent ratification and assent by the wife; but in this case there is no such competent proof, and the declarations of the husband in the absence of the wife cannot affect her interests."

Counsel for defendant excepted to the charge.

October 17th, 1881. Verdict for the plaintiffs for $851.57, on which judgment was afterward entered.

The defendant then took out a writ of error, assigning as errors that part of the charge in brackets, the answers to the points, and that the Court erred in not submitting all the questions of fact to the jury, and in directing a verdict for the plaintiffs, less admitted credits.

*Charles Hunsicker*, for plaintiff in error.

The gist of all the specifications lies in the error of not submitting the question of the husband's agency to the jury. The agency may be presumed from his and her acts.

He took the money with her assent; he made the bargain about the investment, how it should stand for his benefit, that Gerhab should indorse his notes on the credit of this money, so as to enable him to stock his farm (and this he put into writing); that afterward he paid $750 of the principal to him by his note, then $93 interest, and then purchased lumber for $107, all with the presumed assent of the wife, and surely a jury should have been allowed to pass upon the question, whether these and all other acts of Peter S. Ruth and his wife did not constitute him the agent of the wife. And, besides all this, Ruth claimed that part of the money was his: Mann's Appeal, 14 Wright, 375; Earley *v.* Rolfe, 9 W. N. C., 106; Stephens's Appeal, 6 Norris, 202.

[Latshaw *v.* Hiltebeitel, to use, etc.]

*J. Wright Apple*, for defendants in error.

As stated by the counsel of the plaintiff in error, in his argument, the only question here is, did the Court err in not submitting the question of agency on the part of the husband to the jury.

The cases cited by the counsel, Martha Mann's Appeal, 14 Wright, 375, and Earley *v.* Rolfe, 9 W. N. C., 106, deny the wife the right to repudiate the acts of her husband only as to interest or rent, and then only when it is done with her knowledge and without her dissent.

In this case she did not even have knowledge of the transaction.

If it were true that the agency might be inferred from the acts of the husband and wife, even then the credits of $300 and $160 could not be allowed, because Barbara Ruth knew absolutely nothing in reference to the two notes.

Gerhab executed an obligation in favor of the wife. He knew it, and was fully aware of the fact that it was the wife's money, and that she controlled it.

We submit that if a wife's inheritance can thus be squandered by the husband without her knowledge, married women have no protection under the laws of this Commonwealth.

MAY 1ST, 1882.—PER CURIAM: There was no evidence to submit to the jury as to the agency of the husband for the wife. Gerhab knew it was the wife's money, and Ruth's declarations were not sufficient to bind her. The assignments of error to the charge are not sustained.

Judgment affirmed.